**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

|  |  |  |
|---|---|---|
| THE STATE OF GEORGIA, | : | |
| | : | |
| Plaintiff, and | : | CIVIL ACTION NO. |
| | : | 2:01-CV-26-RWS |
| LAKE LANIER ASSOCIATION, | : | |
| | : | |
| Intervenor-Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE UNITED STATES ARMY | : | |
| CORPS OF ENGINEERS, et al., | : | |
| | : | |
| Defendants, and | : | |
| | : | |
| THE STATE OF FLORIDA and | : | |
| SOUTHEASTERN FEDERAL | : | |
| POWER CUSTOMERS, INC., | : | |
| | : | |
| Intervenor- | : | |
| Defendants. | : | |

**<u>ORDER</u>**

Plaintiff, the State of Georgia ("Georgia"), brought this suit challenging

the U.S. Army Corps of Engineer's (the "Corps") decision to deny a Water

Supply Request from Buford Dam and Reservoir at Lake Lanier.  Now before

the Court for consideration are: the State of Florida's Motion to Dismiss [104-

1], or in the alternative, to Abate Proceedings [104-2]; the State of Alabama's

Motion for Leave to Intervene [113-1]; the State of Alabama's Motion to Abate

Proceedings [114-1], or in the alternative, Transfer Proceedings [114-2], and for

Leave to File Briefs in Support Thereof [114-3]; the Motion to Intervene [118-

1] of Gwinnett County, Georgia, the City of Gainesville, Georgia, and the

Atlanta Regional Commission; and the State of Florida's Motion for Leave to

File Supplement to Florida's Renewed Motion to Dismiss or Abate [129-1].

Having considered the record and the parties' briefs, the Court enters the

following Order.

### Background

The Chattahoochee River is part of the Apalachicola-Chattahoochee-Flint

("ACF") River Basin.  The Chattahoochee River rises in the Blue Ridge

Mountains in northeastern Georgia and flows through Atlanta to the southwest

until it turns south and forms the border between the states of Georgia and

Alabama.  The river joins the Flint River at the Florida border, and upon

crossing the Florida border, the river becomes the Apalachicola River and

2

empties into the Apalachicola Bay in the Gulf of Mexico.

In the 1940s, the United States Congress authorized the United States Army Corps of Engineers ("the Corps") to construct a water reservoir on the Chattahoochee River north of Atlanta–Lake Lanier and the Buford Dam. The use of water in this reservoir–and the operation of its dam–are the focal points of this litigation.

This case is the third of three involving rights to the water in the ACF Basin. The first, styled <u>Alabama v. U.S. Corps of Engineers</u>, No. CV-90-H-01331-E, was filed in the Northern District of Alabama, Eastern Division, on June 29, 1990 (the "Alabama case"). The second, styled <u>Southeastern Federal Power Customers, Inc. v. U.S. Army Corps of Engineers</u>, No. 1:00CV02975, was filed in the District of Columbia on December 12, 2000 (the "D.C. case"). The history of each of these cases is relevant to the issues before the Court. The Court therefore discusses the Alabama case, the D.C. case, the interaction between those two cases, and this case–the Georgia case–prior to considering the pending motions.

## A. The Alabama Case

At issue in the Alabama case are contracts executed between the Corps

3

and the Atlanta Regional Commission and the Cities of Gainesville, Georgia,

Buford, Georgia, and Cumming, Georgia, as well as Gwinnett County, Georgia.

The contracts involve withdrawing water directly from Lake Lanier and the

Chattahoochee immediately downstream of Lake Lanier at an average rate of

327 million gallons per day ("mgd"), and at a peak rate of 377 mgd.

The State of Alabama ("Alabama") alleges that the Corps' action in

reallocating storage in Lake Lanier and the Chattahoochee exceeds the Corps'

authority under, *inter alia*, the Water Supply Act of 1958.  The remaining

counts are devoted to alleged violations of the National Environmental Policy

Act ("NEPA"), 42 U.S.C. §§ 4321.[1]  Alabama seeks declaratory and injunctive

relief.

The State of Florida ("Florida") filed a motion to intervene in the suit,

alleging that the Corps has exceeded its authority in operating Lake Lanier.

Georgia filed a motion to intervene as a party defendant, aligned with the

Corps.  A number of local governments and interest groups also moved to

intervene.  On September 19, 1990, the Alabama court entered an order abating

---

[1]The Complaint also encompasses two additional Corps contracts allocating water storage in Lake Allatoona, within the nearby Alabama-Coosa-Tallapoosa River ("ACT") Basin.

4

the action pending the completion of a comprehensive study on water issues in the ACF and ACT Basins and negotiations among the three states and the Corps.  These negotiations led to the adoption of two interstate compacts in 1997:  the ACT Compact, Pub. Law No. 105-105, 111 Stat. 2223; and the ACF Compact, Pub. Law No. 105-104, 111 Stat. 2219.

The ACF Compact was adopted for the purpose of "promoting interstate comity, removing causes of present and future controversies, equitably apportioning the surface waters of the ACF, engaging in water planning, and developing and sharing common databases."  ACF Compact, Art. I.  The Compact did not contain a formula for determining how much water each state was entitled to receive; rather, it was essentially an agreement to agree. Although the states negotiated for years, they never reached an agreement and, after many extensions of the 1998 deadline at which the Compact was to terminate, the Compact expired on August 31, 2003.

## B.  The D.C. Case

On December 12, 2000, some ten years after the commencement of the Alabama case, the Southeastern Federal Power Customers, Inc. ("SeFPC") filed a case against the Corps in the U.S. District Court for the District of Columbia,

AO 72A
(Rev.8/82)

contending that the Corps' contracts with the Atlanta Regional Commission and several other municipalities for the withdrawal of water from the Chattahoochee and Lake Lanier exceed the Corps' authority under the Water Supply Act of 1958 and the Flood Control Act of 1944. Georgia and certain Water Supply Providers[2] moved to intervene, and were permitted by the parties to participate in mediation scheduled to commence in March 2001. In January 2003, the participants–SeFPC, the Corps, ARC, the Water Supply Providers, and Georgia–reached a Settlement Agreement and requested the court's approval.

## C. Interaction Between the Alabama and D.C. Cases

Shortly after the parties reached the Settlement Agreement in the D.C. case, Alabama and Florida moved to intervene to challenge the settlement, and they also revived the Alabama case by moving for a preliminary injunction asking the Alabama court to declare the Settlement Agreement violative of the Alabama stay ordered in 1990.

The Alabama court granted Florida and Georgia intervention in the Alabama case and allowed Florida to join Alabama's motion for preliminary

---

[2]These consisted of the Cobb County-Marietta Water Authority, DeKalb County, Georgia, Gwinnett County, Georgia, the Atlanta Regional Commission, and the City of Gainesville, Georgia.

injunctive relief.  The court granted the motion on October 15, 2003.  In the

order, Judge Bowdre enjoined Georgia and the Corps from implementing any

part of the Settlement Agreement and from entering into any new storage or

withdrawal contracts affecting the ACF Basin without the Alabama court's

approval.  The order provided that the injunction would last until the Alabama

litigation was resolved on the merits.

As grounds for the injunction, the Alabama court held that the Corps had

violated the court's prior 1990 stay by failing to obtain consent from Alabama

and Florida before negotiating and signing the Settlement Agreement.  In so

holding, Judge Bowdre wrote that the Settlement Agreement "does implicate

the subject of [Alabama's original] complaint:  the duty of the Corps to allocate

water from the Buford Dam/Lake Lanier Project in a lawful manner."  (N.D.

Ala. Order of Oct. 15, 2003, at 5.)  Although the complaint focused on certain

specific contracts, Judge Bowdre reasoned, "the true subject of the complaint

remains today what it was then:  the ability of the Corps to make far-reaching

water supply decisions without the participation and consent of those

downstream user states affected by the decisions."  (Id.)

After the Alabama court issued the injunction, the D.C. court allowed the

parties further briefing on the validity of the Settlement Agreement.
Meanwhile, the Alabama court stayed the litigation pending the D.C. court's
anticipated ruling on the Settlement Agreement.

Having granted Georgia, Alabama, Florida, the Water Supply Providers,
the Lake Lanier Association ("LLA"), and the Middle Chattahoochee River
Users' motions to intervene, the D.C. Court considered their challenges to the
Settlement Agreement and issued an order dated February 10, 2004. First,
Judge Jackson emphasized that a settlement between some parties cannot
dispose of the valid claims of nonconsenting intervenors. Though the court
concluded that the obligations of the Corps under the Settlement Agreement
were within the Corps' statutory authority to carry out, it stated, "[e]xecution of
the Settlement Agreement, and any implementation thereof, is however, subject
to [the Alabama court's] injunction, and to that end, before they may act under
the Settlement Agreement, the parties to it must first obtain dissolution of the
injunction in N.D. Ala." (D.D.C. Order of Feb. 10, 2004, at 16.)

**D. Proceedings Before this Court–the Georgia Case**

Though still in its substantive infancy, this case has a long procedural
history. As initially filed, the dispute was limited to Georgia's complaint that

8

the Corps had acted unlawfully in denying the request.  Although that precise

issue is still before the Court, the nature of this case has changed significantly

as a practical matter.

Florida, SeFPC, the LLA, the City of Gainesville, and the Atlanta

Regional Commission moved to intervene in this case; this Court denied those

motions based on its conception of the dispute as being intrastate in nature.

Florida and SeFPC appealed to the Eleventh Circuit, which reversed this

Court's decision and held that Florida and SeFPC were entitled to intervene as

of right.  Georgia v. U.S. Army Corps of Eng'rs, 302 F.3d 1242 (11th Cir.

2002) ("Georgia").

The reasoning of Georgia is crucial to the matters now before the Court.

The Circuit concluded first that Florida was entitled to intervene as a matter of

right.  Id. at 1256.  Rejecting Georgia's contention that the subject matter of the

lawsuit was only intrastate apportionment of water, the Circuit reasoned that

"[a]lthough the remedy sought in Georgia's lawsuit may occur within Georgia's

borders, it will have a practical effect upon water flowing in the Chattahoochee

River . . . to which Florida has a right."  Id. at 1251.  The Circuit held that

Florida "has a legally protectable interest in the quality and quantity of water in

the Apalachicola River and Bay." Id. at 1252.

In light of the negotiations under the ACF Compact, moreover, the Circuit reasoned that, should Georgia prevail in this suit before the parties reached resolution of the issues within the Compact, Florida would not be able to protect its interests with respect to resolution of the Compact issues. Id. at 1253. Moreover, in a later equitable apportionment action under the Supreme Court's original jurisdiction, the Circuit concluded it likely that–if Georgia were to win in this Court–Florida would have to overcome an established water use before the Supreme Court. Id. at 1255.

Likewise, the Circuit held that SeFPC was entitled to intervention as of right. Id. at 1260. Concluding that SeFPC has a legally protectable interest in the production of hydropower at the Buford Project, the Circuit emphasized that the granting of Georgia's Water Supply Request would diminish the overall production of hydropower. Id. at 1258. Next, the Circuit discussed SeFPC's ability to protect its interests, paying particular attention to the *stare decisis* impact of any ruling of this Court on SeFPC's case in the D.C. case. Id. That risk, the Circuit decided, supplied the practical disadvantage necessary to warrant intervention as of right. Id.

Following the Circuit's remand, this Court made the decision of the Eleventh Circuit the decision of this Court; thus, Florida and SeFPC are now parties to this action. (Order entered Dec. 24. 2002.) Subsequently, the Court granted the LLA's Motion to Intervene. (Order entered Jan. 28, 2003.) The Court offered the parties additional time to respond to Florida's Motion to Dismiss or in the alternative, Abate Proceedings, and set forth a schedule for summary judgment briefing to go into effect following the Court's ruling on Florida's Motion. (Id.) Thereafter, Alabama and Gwinnett County, Georgia, the City of Gainesville, Georgia, and the Atlanta Regional Commission (collectively for purposes of this case, the "Water Supply Providers") moved to intervene in this case.

## Discussion

As described below, the Court determines that this action must be stayed. Nevertheless, it first considers the motions to intervene in the interest of future judicial efficiency should this case for some reason be re-opened.

## I. Motions to Intervene

Alabama moves to intervene based on its status as an ACF riparian and the reasoning set forth in <u>Georgia</u>. Georgia opposes the Motion, arguing that it

11

is untimely and disrupts the briefing schedule set forth in the January 28, 2003

Order.

The Court finds that the timing considerations are minimal and the

Circuit's reasoning in <u>Georgia</u> is dispositive.  Like Florida, Alabama is a

downstream riparian on the Chattahoochee and therefore has a legally

protectable interest in the allocation of water within the upstream state's

borders.  <u>Georgia</u>, 302 F.3d at 1251.  Like Florida, Alabama is unable to

adequately protect its interests in this limited resource without intervention.  <u>Id.</u>

at 1253-55.  The Court relies on the reasoning set forth in <u>Georgia</u> and finds

that Alabama is entitled to intervene in this case as a matter of right.  As noted

previously, the merits of this case have not yet been briefed; moreover,

Alabama filed this Motion shortly after the Eleventh Circuit entered its

mandate.  Thus, Georgia's timeliness objections do not dictate a different result.

Further, because the Court determines that this case must be stayed, Georgia's

concerns about the briefing schedule are mooted.  Accordingly, Alabama's

Motion for Leave to Intervene [113-1] is hereby **GRANTED**.

The Water Supply Providers also move to intervene; they are local

government entities that provide water from the ACF basin to their customers.

Some of these entities were parties to the D.C. case and as described below,

some of them are parties to the water supply contracts contested in the Alabama

case. No party has opposed their Motion, and the Court finds that they are

entitled to permissive intervention. See Fed. R. Civ. P. 24(b)(2) (court may

exercise discretion to permit intervention when applicant's claim and main

action have question of law or fact in common, provided intervention will not

unduly delay or prejudice adjudication of the rights of original parties). The

Motion [118-1] is hereby **GRANTED**.

## II.  Motion to Dismiss or Abate

Florida urges the dismissal or abatement of this action based upon the

abstention-like doctrine announced in Colorado River Water Conservation

District v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).

In Colorado River, the Court held that considerations of wise judicial

administration, conservation of judicial resources, and comprehensive

disposition of litigation could justify a federal court's dismissing or abating an

action when a parallel suit is pending in another district. See id. at 817-18.

Although the case before it involved parallel proceedings in state and federal

courts, the Court noted that between federal district courts, "the general

13

principle is to avoid duplicative litigation." <u>Id.</u> at 817.  The Court applied a

two-pronged test to determine whether dismissal or abatement is warranted.

First, a court must determine whether the cases are parallel to one another.

Second, a court should engage in a multi-factor balancing test considering the

following non-exclusive factors:  (1) whether either court has assumed

jurisdiction over a *res*; (2) the inconvenience of the forum; (3) the desirability

of avoiding piecemeal litigation; and (4) the order in which the forums assumed

jurisdiction.  <u>Id.</u> at 818.  The Eleventh Circuit has catalogued two additional

factors:  whether federal or state law will be applied; and the adequacy of the

state court for protecting the parties' rights.[3]  <u>Moorer v. Demopolis Waterworks</u>

<u>& Sewer Bd.</u>, – F3d –, 2004 WL 1300156, at *1 (11th Cir. June 14, 2004);

<u>Ambrosia Coal & Constr. Corp. v. Pages Moralez</u>, 368 F.3d 1320, 1329-30

(11th Cir. 2004).  Further, courts may consider the reactive nature of the suit

sought to be stayed and whether the issues involve a federal statute that evinces

a policy favoring abstention.  <u>Ambrosia</u>, 368 F.3d at 1331.

 The Court concludes that the first prong is met.  Proceedings are parallel

---

[3]Because these factors focus on the propriety of staying a federal case in favor of a state proceeding, they are neutral in this case where two federal proceedings are at issue.

if "substantially the same parties are contemporaneously litigating substantially the same issues in more than one forum." Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988); see also Ambrosia, 368 F.3d at 1330. However, the parallel nature of two suits is not defeated by additional parties or issues. Interstate Material, 847 F.2d at 1288. An absolute identity of parties, issues, and requests for relief is not required. Ambrosia, 368 F.3d at 1239-30.

Here, the parties in this case and Alabama are substantially the same. Florida, Georgia, Alabama, and the Corps are parties to the Alabama case. While the other parties may need to seek intervention in the Alabama case, they have not responded to Florida's motion and are therefore deemed to be unopposed to the relief sought.[4]

Whether the subject matter of the cases is substantially similar hinges on characterization. Georgia characterizes this case as a simple intrastate dispute

---

[4]Of course, the Water Supply Providers and Alabama were not parties to this case during the briefing on Florida's motion. However, Alabama has asked for leave to file briefs supporting a motion for a stay pending the resolution of the Alabama case. The Water Supply Providers were parties to the D.C. case and have come along somewhat later to this litigation; it is unclear whether they are already parties to the Alabama litigation, but they are parties to the contracts at issue in that case and should be aware of the case. At any rate, they may seek intervention in Alabama if they so choose.

between the state and the Corps over a single denial of a Water Supply Request. In contrast, Florida contends that this case is about entitlement to and apportionment of water in the ACF Basin. As the Court noted earlier, the Eleventh Circuit's ruling in <u>Georgia</u> significantly changed this case's scope. By recognizing the interrelatedness of Georgia's claims and Florida's legally protectable interest in the same water, the Circuit expanded this case to the boundaries of the ACF watershed. This case is no longer confined to Georgia's borders; it reaches to hydrological borders which encompass several states and interests. The Court concludes that the subject matter of this case involves competing claims to water in the ACF Basin and the Corps' management of that water.

Similarly, the use of water within the ACF Basin, and the Corps' contracts with respect to that water, are the subject matters of the Alabama case. The Court has reviewed the parties' filings with respect to the Alabama case, and agrees with Judge Bowdre's characterization of the Alabama case: "the true subject of the complaint remains today what it was then: the ability of the Corps to make far-reaching water supply decisions without the participation and consent of those downstream user states affected by the decisions." (N.D. Ala.

16

Order of Oct. 15, 2003, at 5.)  This subject matter is without doubt substantially

similar to that at issue here.

The other factors in the second prong of the <u>Colorado River</u> analysis also

support a stay.  First, the Alabama court was the first to acquire jurisdiction

over the *res*.  This factor is important because it takes into account the problems

that would be encountered with inconsistent dispositions of property.  <u>Colorado</u>

<u>River</u>, 424 U.S. at 819.  As the Supreme Court has stated: "[t]his concern is

heightened with respect to water rights, the relationships among which are

highly interdependent.  Indeed, we have recognized that actions seeking the

allocation of water essentially involve the disposition of property and are best

conducted in unified proceedings."  <u>Id.</u>; <u>cf.</u> <u>Ambrosia</u>, 368 F.3d at 1332

(distinguishing water, with its property-like qualities, from action seeking

damages and equitable rescission of contract).

Second, with the addition of the other states to this case, the convenience

of this forum is diminished.  This factor focuses on location of evidence and

witnesses.  <u>Ambrosia</u>, 368 F.3d at 1332.  Although the original plaintiff,

Georgia, wishes to litigate this case in Georgia, it has also asked for and been

granted permission to participate in the Alabama case.  With all the states

AO 72A
(Rev.8/82)

involved, the evidence and witnesses are no longer located solely in Georgia.

The court concludes that it is far more convenient to litigate in a single forum

(which is not very far away) than in multiple forums as has occurred over the

past few years.

Third, it is clear that abating this action will help avoid piecemeal

litigation.  Piecemeal litigation has already occurred:  the D.C. court entered an

order approving a Settlement Agreement but deferring to the Alabama court's

injunction and noting that the nonconsenting parties were not bound; the

Alabama court stayed its proceedings while awaiting that ruling; this Court has

granted a joint motion to suspend proceedings while awaiting developments in

the Compact negotiations which developed out of the Alabama case.  Further,

any relief this Court might grant would have to be considered in light of rulings

made in the Alabama case.  Waiting on other courts to make decisions, as has

already occurred in this case, is inefficient for everyone and ties up judicial

resources in the process.

Fourth, as mentioned previously, Alabama took jurisdiction of this

subject matter first.  This factor is not to be considered rigidly, but in terms of

the amount of progress in each suit.  Moses H. Cone Mem. Hosp. v. Mercury

<u>Constr. Corp.</u>, 460 U.S. 1, 21, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983);

<u>Ambrosia</u>, 368 F.3d at 1333.  Here, the Alabama court has invested significant

time in resolving the ACF Basin issues and is far more familiar with those

issues than this Court.  This Court has yet to reach any of the merits of

Georgia's claims, and this case is in its infancy compared to Alabama.

Georgia relies on <u>American Manufacturers Mutual Insurance Co. v.</u>

<u>Edward D. Stone, Jr. & Assocs.</u>, 743 F.2d 1519 (11th Cir. 1984).  There, the

Eleventh Circuit reversed the district court's decision to stay a federal

proceeding pending resolution of a related state proceeding.  The federal

litigation involved a surety's claim that a landscape architectural firm had

negligently designed and prepared site plans for a construction project.  <u>Id.</u> at

1523.  In the state action, certain subcontractors charged the same landscape

architectural firm with negligence in its selection of the site contractor, its

supervision of the site preparation, and its design of the site's surface structures.

<u>Id.</u>  The surety was also named as a defendant in the state proceeding.  <u>Id.</u> at

1521.

The court concluded that the actions were not parallel so as to justify a

stay because they involved different claims.  <u>Id.</u> at 1524.  Furthermore, because

19

the stay involved a federal court's rejection of jurisdiction in favor of a state proceeding, the court required a showing of exceptional circumstances justifying the stay. See id. at 1525 (setting forth multi-factor Colorado River test). First, neither court had assumed jurisdiction over any property relating to the case. Id. Second, there was no greater inconvenience in litigating both suits than there was in reconvening the federal suit following the disposition of the state suit. Id. Moreover, the court determined that the federal suit would have to be reconvened because the surety's claims would not be resolved by the state action; thus, there was no avoidance of piecemeal litigation. Id. Because the surety's claim was not before the state court, it was not filed there first; and although state law would control in the federal litigation, the court reasoned that it was the surety's right, by virtue of diversity jurisdiction, to have those claims heard in federal court. Id.

American Manufacturers is distinguishable on several grounds, two of which are particularly important. First, it involved potentially parallel state and federal proceedings; staying the federal case therefore implicated the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them." Colorado River, 424 U.S. at 817; Am. Manufacturers, 743 F.3d at 1525.

20

As <u>Colorado River</u> itself noted, this concern is not so strong and justifies a

difference in approach when the two proceedings are both in federal court, as

they are here.  424 U.S. at 817.  Second, <u>American Manufacturers</u> was a

construction case involving money.  <u>Cf.</u> <u>Ambrosia</u>, 368 F.3d at 1332

(distinguishing facts of <u>Colorado River</u> in case involving contract).  There was

no indication in <u>American Manufacturers</u> that an award to the plaintiffs in the

state proceeding could impact the surety's ability to recover in the federal

proceeding.  By contrast, this case involves a limited resource, the availability

of which could be significantly altered by a judicial ruling on entitlement, and is

furthermore subject to numerous hydrological factors outside of any particular

party's control.[5]

    Based on the foregoing, the Court will stay this case pending resolution

of the Alabama case.  Accordingly, Florida's Motion to Dismiss [104-1] is

hereby **DENIED**; its Motion to Abate [104-2] is hereby **GRANTED**.  <u>See</u>

---

[5]The Court is mindful of Georgia's contention that if this case is really about states' disputes with one another over water, it would fall within the Supreme Court's original jurisdiction.  The Eleventh Circuit has already explained why it does not believe this case falls within that jurisdiction.  <u>Georgia</u>, 302 F.3d at 11.  As it described, this case is about the states wanting the Corps to act on water supply requests in different ways–something also at issue in the Alabama case.

21

Moorer, 2004 WL 1300156, at *2 (where court determined Colorado River

factors were met and the parallel proceedings were in federal and state courts,

proper approach was to stay case, not dismiss it).

### Conclusion

Alabama's Motion for Leave to Intervene [113-1] is hereby **GRANTED**;

the Motion to Intervene [118-1] of Gwinnett County, Georgia, the City of

Gainesville, Georgia, and the Atlanta Regional Commission is hereby

**GRANTED**; the State of Florida's Motion to Dismiss [104-1] is hereby

**DENIED**, but its alternative Motion to Abate Proceedings [104-2] is hereby

**GRANTED**; the State of Alabama's Motion to Abate Proceedings [114-1], or

in the alternative, Transfer Proceedings [114-2], and for Leave to File Briefs in

Support Thereof [114-3] are hereby **DENIED as moot**; and the State of

Florida's Motion for Leave to File Supplement to Florida's Renewed Motion to

Dismiss or Abate [129-1] is hereby **GRANTED**.

It is further **ORDERED** that this action is **abated and administratively**

**closed** pending final judgment in Alabama v. U.S. Corps of Engineers, No. CV-

90-H-01331-E (N.D. Ala. filed June 29, 1990).  The case will not be reopened

except by motion of a party.

22

**SO ORDERED** this __20th_____ day of July, 2004.

                              s/ Richard W. Story
                              RICHARD W. STORY
                              UNITED STATES DISTRICT JUDGE